USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/19/2026__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMOS FINANCIAL, LLC,

                      Plaintiff,

   -against-

SULLIVAN COUNTY et al.,

                    Defendants.

7:24-cv-05365

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Amos Financial ("Plaintiff") commenced this action under RPAPL § 1955 to extinguish a deed restriction limiting certain real property to educational use against Defendants Sullivan County, Sullivan County Community College Dormitory Corporation, County of Sullivan Industrial Development Agency, County of Sullivan Funding Corporation, the New York State Attorney General, Eco Freen Community Housing Fund, L.P., Sullivan Solar Garden, LLC, and John and Jane Doe (collectively, "Defendants").

Presently before the Court is Defendants Sullivan County Community College Dormitory Corporation and Sullivan County's partial motion to dismiss Plaintiff's second cause of action (extinguishment of a deed restriction) in the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion is GRANTED.

## BACKGROUND

The following facts are derived from the FAC and are assumed to be true for purposes of resolving the instant motion.

1

Plaintiff brings this action to foreclose a mortgage on property commonly known as 19, 21, and 23 Greenway Lane in Fallsburg, New York (the "Property"). Sullivan County originally acquired the Property pursuant to two deeds executed in June 1965 (the "1965 Deeds"), each providing that the land "shall vest and be held in trust" for the uses and purposes of Sullivan County Community College ("SCCC"). (FAC ¶¶ 50–52; Ex. 11.)

In December 1998, Sullivan County conveyed the Property by quitclaim deed ("1998 Deed"), approved by the County Legislature, to the Sullivan County Community College Dormitory Corporation ("Dormitory Corp.")—a not-for-profit entity formed by SCCC to finance construction of a dormitory on the Property. (*See* FAC ¶ 6, Ex. D.) The Dormitory Corp. then transferred the Property to Sullivan County Industrial Development Agency ("SCIDA") on June 1, 2002 ("2002 Company Deed"). (*See id.* Ex. E: Company Deed.) SCIDA then deeded the Property back to Dorm Corp. that same day ("2002 Issuer Deed"). (*See id.* Issuer Deed, Ex. F.)

In 2014, the Sullivan County Funding Corporation ("SCFC"), acting as a conduit issuer, authorized issuance of two revenue bonds (collectively, the "Bonds") to refinance indebtedness associated with the dormitory project constructed on the Property. (FAC ¶¶ 16–23.) Sterling National Bank ("Sterling") purchased the Bonds pursuant to a Bond Purchase and Loan Agreement dated June 26, 2014, and the bond proceeds were loaned to Dormitory Corp. (*Id.* ¶¶ 21–22.) As security, Dormitory Corp. and the Sullivan County Industrial Development Agency ("IDA") granted SCFC a first-priority mortgage on the Property (the "Mortgage"). (*Id.* ¶ 23; Ex. 4.)

Sterling later assigned the Mortgage to Webster Bank following Webster's acquisition of Sterling, and Webster subsequently assigned all rights under the Bonds and Mortgage to Plaintiff. (FAC ¶¶ 26–27.) The Dormitory Corp. allegedly failed to make the required bond payments

beginning in October 2023. (*Id.* ¶ 32.) Webster issued a default notice on December 5, 2023, demanding Dormitory Corp. "pay the past due monthly payments on or before December 20, 2023." (*Id.* ¶ 36.) However, Dormitory Corp. did not cure the default, and failed "to pay monthly installments of principal and interest in each of the months thereafter, including the months of December 2023, January 2024, February 2024, March 2024, April 2024, and May 2024." (*Id.* ¶ 37.)

On June 5, 2024, Plaintiff accelerated the indebtedness owed by Dormitory Corp. under the Bonds. (FAC ¶ 44.) Plaintiff now seeks to foreclose on the Mortgage and to extinguish the 1965 Deeds' restrictive covenant requiring that the Property be held in trust for SCCC's use. (*Id.* at 11–12.)

## PROCEDURAL HISTORY

On July 17, 2024, Plaintiff filed the initial complaint seeking foreclosure of the Property against Defendants, extinguishment of the purported restrictive covenant, and appointment of a receiver. (Compl., ECF No. 10). Shortly thereafter, Plaintiff filed the First Amended Complaint. (*See generally* FAC, ECF No. 34). On April 16, 2025, Defendants filed a partial motion to dismiss the Second Cause of Action in the FAC, accompanied by a supporting memorandum of law, which now sits before the Court. (Defs. Mot., ECF No. 92; Defs. Mem. in Support, ECF No. 94.) Plaintiff's counsel filed an opposition to the Motion to Dismiss (Pltf. Opp., ECF No. 95) and Defendants filed a Reply thereafter. (Defs. Reply, ECF No. 99.)

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim is subject to dismissal for "failure to state a claim upon which relief can be granted" if it fails to state a legally cognizable claim. Fed. R. Civ. P. 12(b)(6). The claim must therefore contain sufficient allegations which,

when accepted as true, rise above "the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim maintains facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

In examining a motion to dismiss under Rule 12(b)(6) the Court must regard all allegations as true and draw all reasonable inferences in favor of the plaintiff. *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015). However, this presumption does not apply to "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

A court may consider documents that are attached as exhibits to the complaint, or which are incorporated by reference. *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (holding a court may, "consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–153 (2d Cir. 2002). Furthermore, a court is not bound to regard as true allegations in the complaint which are contradicted by written documents attached as exhibits or incorporated by reference. *See Faber v. Metropolitan Life Insurance Co.*, 648 F.3d 98, 104 (2d Cir. 2011); *see also Roth v. Jennings*, 489 F.3d 499, 510–11 (2d Cir. 2007) (holding that when evaluating a motion to dismiss, a court may consider documents incorporated by reference and may reject allegations that are contradicted by those documents.)

### DISCUSSION

Any party seeking to extinguish a restriction on real property for the benefit of charity or education must meet the requirements of Real Property Actions and Proceedings Law ("RPAPL")

§ 1955. RPAPL § 1955 governs the extinguishment of restrictions on real property, including those imposed for "educational" purposes. *Up State Tower Co., LLC v. Town of Cheektowaga, New York*, No. 1:19-CV-280, 2021 WL 2635430, at *8-9 (W.D.N.Y. June 25, 2021). Before reaching extinguishment under RPAPL § 1955, the Court must determine whether there exists a valid real covenant. *See* N.Y. RPAPL § 1955(1).

### I.      Validity of the Purported Real Covenant

For a covenant to run with the land it must satisfy three (3) requirements:

"(1) The original grantee and grantor must have intended that the covenant run with the land; (2) There must exist 'privity of estate' between the party claiming the benefit of the covenant and the right to enforce it and the party upon whom the burden of the covenant is to be imposed; and (3) The covenant must be deemed to 'touch and concern' the land with which it runs."

*Eagle Enters., Inc. v. Gross*, 39 N.Y.2d 505, 508 (1976) (citing *Neponsit Prop. Owners' Ass'n v. Emigrant Indus. Sav. Bank*, 278 N.Y. 248, 254–255 (1938)); *see also* Restatement (Second) of Property: Servitudes §§531–540 (1977). Plaintiff does not contest the second requirement, privity of estate, and provides documentary evidence of valid chain of title, resting the extinguishment claim on a failure to satisfy the first and third requirements. (*See* FAC ¶¶ 212–222.)

### A.  Intent for the Covenant to Run with the Land

New York favors the free and unencumbered use of real property, and courts are required to strictly construe restrictive covenants against the party seeking to enforce them. *Turner v. Caesar*, 291 A.D.2d 650, 651 (2002) (citing *Witter v. Taggart*, 78 N.Y.2d 234, 237 (1991)). Courts generally approach restrictive covenants cautiously, as such covenants "bind future possessors of real property," and are therefore "strictly" construed "against those seeking to enforce them." *Witter,* 78 N.Y.2d at 237–38. A party must prove by clear and convincing evidence the existence

of a land restriction and the scope of the restriction. *Greek Peak, Inc. v. Grodner*, 75 N.Y.2d 981, 982 (1990); *Krupp v. Martin-Neyrey*, 227 A.D.3d 880, 881 (2024); *see also Huggins v. Castle Estates*, 36 N.Y.2d 427, 430 (1975) (A party seeking enforcement bears the burden and must establish intent "by more than a doubtful right").

A party attempting to demonstrate the existence of a purported restrictive covenant must demonstrate the grantor and grantee intent to convey, transfer title, subject to the restriction. *See Kingston Model R.R. Club, Inc. v. Eleven Main Grp., LLC*, 123 A.D.3d 1193, 1194 (2014). The intent of the grantor and grantee is determined primarily from the deed itself, and only "if necessary" by examining the surrounding circumstances. *See BPGS Land Holdings, LLC v. Flower*, 198 A.D.3d 1344, 1346 (2021) (holding that the intent of the parties can be gathered from the deed manifested by the language used)." [A] court will only look outside the four corners of the deed to establish the intent of the parties when . . . that instrument is found to be ambiguous." *Id*. (quoting *Pepe v Antlers of Raquette Lake, Inc.,* 87 A.D.3d 785, 787 (2011)).  Any ambiguity in a covenant that appears to constitute a restriction does not necessarily preclude its enforcement but merely requires the court to construe the covenant to limit its restriction. *See Etkin v. Hyney*, 32 A.D.2d 704, 704 (1969); *see also*, *Freedman v. Kittle*, 262 A.D.2d 909, 911(AD 3d dept. 1999); *Gitlen v. Gallup*, 241 A.D.2d 856, 858 (1997); *Bear Mtn. Books v. Woodbury Common Partners*, 232 A.D.2d 595, 596 (1996).

Covenants, including restrictive covenants, are "subject to the general rules of construction. *See Rydberg v. Jennings Beach Ass'n, Inc.*, 69 A.D.2d 816, 817, *aff'd*, 49 N.Y.2d 934 (1980). The best evidence of what the parties intended is the writing itself. *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002). A provision is unambiguous if the language used has a definite and precise meaning, not subject to misconception, and creates no reasonable basis for a difference of

opinion. *Id*. Courts have found intent where the instrument uses clear, forward-looking language signaling that the restriction is permanent or binds successors**.** *See Orange and Rockland Utilities, Inc. v. Philwold Estates, Inc.*, 52 N.Y.2d at 253 (1981); *Niagara Mohawk Power Corp. v. Allied Healthcare Products, Inc.*, 137 A.D.3d 1539 (2016).

Plaintiff contends that the 1965 Deeds are devoid of language supporting the existence of a restrictive covenant. (*See* Pltf. Opp. at 11.) However, courts have held that language found within the *habendum* clause, which defines the estate conveyed and who is bound by it, to be reflective of the grantor's intent. *See Harrison v. Westview Partners, LLC*, 79 A.D.3d 1198 (2010); *see also 328 Owners Corp. v. 330 W. 86 Oaks Corp.*, 8 N.Y.3d 372 (2007) (holding that every instrument creating or transferring an estate or interest in real property must be construed according to the intent of the parties, as gathered from the whole instrument.) In the 1965 Deeds, the *habendum* clause states that the restriction is binding on "all successors and assigns forever, all" of the grantee. (*See* 1965 Deed, ECF No. 34-11 at 6, 8.)

The deeds also state, "[i]n accordance with the provisions of Section 6306 of the educational law of the State of New York, title to the real property hereby conveyed shall vest in and by the party to the second part [Sullivan County, a political subdivision of the State of New York], in trust, for the use and purposes of the Sullivan County Community College." Id. N.Y. Educ. Law § 6306 (4) provides in relevant part that "the board of trustees of [a]… community college may acquire by deed, gift, devise, bequest or lease, real or personal property suitable for carrying out the program and purposes of the college… Title to real property so acquired shall vest in and be held by the local sponsor in trust for the uses and purposes of the community college." The use of the phrase, "*shall* vest and be held" (emphasis added) in trust by the county for the "uses and purposes" of the Sullivan County Community College, is indicative of a mandatory

condition as opposed to the use of the phrase "may use," which is permissive. (*Id.* at 7, 9.) The mandatory phrase "shall vest and be held," "speaks in terms of perpetuity" and evidences an intent to impose a continuing obligation on future interest holders in the Property. *Malley v. Hanna*, 65 N.Y.2d 289, 292 (1985). Accordingly, the plain language of the 1965 Deeds makes clear the parties intended to bind not only the instant grantee but also future "successors and assigns". (*Id.*) Plaintiff's attempt to distinguish *Malley* based on the word "ever" is unpersuasive. The court in *Malley* deemed the phrase "no double house * * * shall ever be built, to reflect an intent to apply in perpetuity. *Id.*

Viewed together, the *habendum* clause and the mandatory trust language reflect a clear intent that the covenant extend forward in time and apply to future assigns. Based on the plain language of the 1965 Deeds, the grantors' intent is unambiguous. Accordingly, the Court need not look beyond the four corners of the deeds. This language reflects a clear intent to bind future parties and has been recognized as indicative of an intent to bind successors**.** *Id.*; *see also Graves v. Deterling*, 120 N.Y. 447, 457 (1890). Accordingly, the Court concludes that the covenant was intended to run with the land.

### B.  Touch and Concern the Land

Courts have consistently held that a covenant touches and concerns the land when it substantially bears on the rights of subsequent property owners. *See Neponsit Prop. Owners' Ass'n*, 278 N.Y. 248, 254–255 (1938). This occurs when the covenant "affects the legal relations—the advantages and the burdens—of the parties… as owners of particular parcels of land and not merely as members of the community in general." *Pugliatti v. Riccio*, 14 N.Y.S.3d 785, 787 (2015) (internal citations omitted); *see also Nicholson v. 300 Broadway Realty Corp.*, 7 N.Y.2d 240, 257 (1959); *Harrison v. Westview Partners, LLC,* 79 A.D.3d 1198, 1200 (N.Y. App. Div. 3d Dep't

2010) (holding that if "the legal rights stemming from the ownership of the parties' properties are substantially altered because of the covenants [] the covenants touch and concern the land.")

Plaintiff seeks extinguishment of the covenant explicitly because "the restrictions will preclude use by a subsequent buyer." (*See* FAC ¶ 54.) That concession directly demonstrates that the covenant alters the "legal rights" of future owners, satisfying the touch-and-concern requirement. *Harrison*, 79 A.D.3d at 1200. Plaintiff contends that the language pursuant to New York Education Law § 6306 renders the restriction non-performable by future owners. (*See* Pltf. Opp. at 11.) But N.Y. Educ. Law § 6306(4) expressly authorizes a community-college sponsor to transfer property held in trust, with board approval, so long as the property remains dedicated to college purposes. Accordingly, these authorities undermine Plaintiff's premise that subsequent owners cannot carry out the trust purpose. The statutory scheme anticipates transfers and financing arrangements of the very type used here, and nothing in N.Y. Educ. Law § 6306 suggests that later owners are incapable of holding the Property for SCCC's benefit.

Because the covenant bears directly on the "legal rights" of subsequent holders of interest in the Property and because the obligation is not personal to the initial grantee, the Court finds the covenant touches and concerns the land. As the covenant satisfies the three (3) necessary requirements, the Court concludes that the covenant is valid and runs with the land.

## II.    EXTINGUISHMENT OF THE RESTRICTIVE COVENANT

Plaintiff's second cause of action seeks the extinguishment of the real covenant restricting the Property to SCCC's uses. (*See* FAC at 12.) As the land is restricted for "educational" purposes, any party seeking to modify or extinguish the covenant must proceed pursuant to RPAPL § 1955. N.Y. Real Prop. Acts. Law § 1955 (2025). However, RPAPL § 1955(5) holds, explicitly, that the extinguishment powers granted by the statute do not apply "where the *conveyance* creating the

9

restriction was made by or the agreement creating the restriction was made with . . . the state of New York or any governmental unit, subdivision or agency of the . . . state of New York." (emphasis added) (*Id.*) The 1965 Deeds convey the Property to Sullivan County, "a political subdivision of the state of New York". (*See* 1965 Deed, ECF No. 34-11 at 6, 8.) RPAPL § 1955 governs the extinguishment of such restrictions. *Up State Tower*, 2021 WL 2635430, at *5. Thus, RPAPL §1955(5)(b).[1] bars extinguishment where the restriction arises from a conveyance by a governmental subdivision, as here. Accordingly, Plaintiff fails to state a claim as a matter of law.

### III.    LEAVE TO AMEND

Courts are to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the "precise defects" of those claims. *Williams v. Citigroup Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). If a complaint's deficiencies are "substantive" as opposed to "inadequately or inartfully" pled, an opportunity to replead would be "futile" and "should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Milanese v. Rust—Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice, or futility.")

The Court finds that it would be futile to grant Plaintiff leave to amend the FAC. While Plaintiff has included a few additional conclusory allegations, these allegations do not cure the legal deficiencies in Plaintiff's second cause of action for extinguishment of a deed restriction. "RPAPL § 1955 provides the exclusive mechanism to obtain a court order modifying or extinguishing restrictive covenants created for. . . 'educational . . .purposes,'" and §1955(5) forbids

---

[1] The statute provides this section, [RPAPL 1955] shall not apply where the conveyance creating the restriction was made by or the agreement creating the restriction was made with the United States, the state of New York or any governmental unit, subdivision or agency of the United States or the state of New York. N.Y. Real Prop. Acts. Law § 1955(5)

10

the extinguishment of restrictions when the generative conveyance was with a "subdivision . . . [of] the State of New York." *Up State Tower,* 2021 WL 2635430, at *5; RPAPL § 1955(5). The restriction is valid, for educational purposes, and the conveyance was with Sullivan County, "a political subdivision" of the state of New York. (*See* 1965 Deed, ECF No. 34-11 at 6, 8.) The Court therefore declines to grant Plaintiff, who is represented by counsel, leave to amend at this time. *See Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45–46 (2d Cir. 2008) (district court did not exceed its discretion by not *sua sponte* granting leave to amend where Plaintiff had already amended complaint once and amendment would have been futile).

## CONCLUSION

Defendants Sullivan County and Sullivan County Community College Dormitory Corporation's motion to dismiss Plaintiff's second cause of action (extinguishment of a deed restriction) is GRANTED. Plaintiff's second cause of action is dismissed with prejudice, as amendment would be futile. Defendant Sullivan County Community College Dormitory Corporation is directed to file an Answer to the First Amended Complaint on or before April 16, 2026. The following parties have yet to file a notice of appearance or otherwise respond to the First Amended Complaint: New York State Attorney General and Sullivan Solar Garden, LLC. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 92

Dated: March 19, 2026
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

11